The next case for argument is 19-1145 Blackberry v. Google. The next case for argument is 19-1145 Blackberry v. Google. I think we're ready when you are. Good morning. Good morning, Your Honors. Ching-Li Fakuda on behalf of Appellant Blackberry. May it please the Court. So we know that obviousness is often susceptible to improper hindsight analysis. And that is why the Supreme Court and this Court have set out clear precedents to avoid such hindsight analysis. The Board's decision regarding Claim 4 of the 384 patent at issue here is a classic example of such hindsight analysis. Now, you'll understand from reading the 384 patent that the Blackberry invention at issue here in Claim 4 is putting a lot of information that's happening. Can I just clarify where we are here because there are quite a number of claims at issue. So the main claims, the Claim 4 is the cell phone implementation of Cadiz. So that's not, a large portion of this is focused on issues other than that, right? So you're jumping right to the Claim 4 issue. Yes, I want to make sure that this Court focuses on the fact that what the error that happened with respect to Claim 4 first. So what the Board did was to rely on certain specific embodiments in Cadiz to find every element of the independent Claim 1 either disclosed or obvious. And then went over to Claim 4 and said, Claim 4, the additional element of a cell phone. Well, Cadiz discloses a cell phone and therefore it's all there. And that is improper because what Cadiz does not disclose is that the specific implementations that were relied on for Claim 1 can be implemented on a cell phone. There's no evidence of that. And in fact, Cadiz itself teaches that you wouldn't do it that way if you were at all trying to put these implementations on a handheld device. So what happens is the Board forgot what was not known 15 years ago. In 2004, the first iPhone was years away from being on the market. BlackBerry devices were the very first handheld devices to capture the market. And BlackBerry then had to solve the problem of cramming this large amount of information from multiple, multiple applications onto a tiny screen on a cell phone. So what may seem obvious now was not so 15 years ago. What the Board did do is to rely solely on the attorney argument and against the evidence to find that the Cadiz reference describes. Is it your view that the Board found that Cadiz discloses application on a cell phone or that the Board said it would be obvious to put it on a cell phone based on Cadiz? I'm trying to understand. Is your argument that the Board incorrectly found it was disclosed expressly in the reference or that it didn't find it was disclosed in the reference, but rather found it would be obvious in light of what was disclosed in the reference? What is your take on the Board's opinion? The Board found that Cadiz disclosed cell phone or implement – putting the implementations on a cell phone. And it expressly said so in its order. Yeah, but it did. It said Cadiz discloses limitations of Claim 4, and the very next sentence says, and Claim 4 would have been obvious over Cadiz. So the hard thing for me to reconcile is that that feels like two separate decisions on my point. Yes, Your Honor. So I don't think you just have to overcome whether it discloses it. I think you actually have to overcome also whether it's obvious in light of what's disclosed in Cadiz. Your Honor, you're right that the ground ultimately against Claim 4 that was adopted by the Board was one of obviousness. But the obviousness argument was with respect to two elements in Claim 1. So the Board had found that every element of Claim 1 was in Cadiz and that the other two were obvious, and that was the selectable link element as well as the fact that the selectable link can invoke the application. Those were the only two arguments in Google's petition about obviousness. Google never set forth an obviousness argument with respect to Cadiz's disclosure on a cell phone. In fact, consistently throughout the petition, Google argued that Cadiz discloses these implementations on a cell phone, and the Board in its final decision also adopted that. With respect to the analysis of Claim 4, the Board said obviousness with respect to Claim 1, but Cadiz discloses the cell phone limitation. So ultimately when you put Claim 1 and 4 together, it's one of obviousness. So I think it's important to pick out the fact that the cell phone implementation was on the basis of Cadiz's disclosure, not that it would have been obvious to implement that information on a cell phone. There's no argument on motivation to put all those specific elements. It was expressed in Cadiz because Cadiz says various elements may be reduced in size or limited to part of the display. It emphasizes that itself. So I don't see no motivation. I don't understand. It discloses a number of interfaces. In earlier embodiments, it says they could be on well-known devices, including cell phones. In later embodiments, it doesn't say they can't be on cell phones. So I guess I just don't understand. Even if you're right about the idea that it doesn't expressly disclose the person-centric or email-centric interfaces on cell phones themselves, even if it doesn't disclose it, it's hard for me to imagine anybody reading that wouldn't understand it as at least suggesting it. So what Cadiz actually disclosed is the only thing that it talked about with respect to a handheld device is in figure 6C. And if you look at paragraph 63 of Cadiz, it says the embodiment wherein the entire display is covered is particularly useful where the system and method of the present invention will be used on a device having a relatively small display area, such as, for example, a handheld or palm-top computing device, a cell phone, and so forth. So what Cadiz is teaching is if you're going to take our implementations and put it on something like a cell phone, what happens is what's claimed to be that dynamic bar, that first element that we're talking about here, that dynamic bar takes up the entire display. Because the cell phone and the handheld device screen is so small, that dynamic bar takes up the entire display. And that's it. That's all Cadiz says. It doesn't say that now you have any room left to expand that dynamic bar into an expanded dynamic bar and be able to access additional information with selectable links in there that would allow you to then invoke the applications. And in fact, both sides expert agreed that there are differences in the designs between a desktop and a cell phone that would create problems like this. Both sides experts agree that there'll be differences in processing power, in memory, in screen resolution, that may make this, you can't just take every disclosure in Cadiz and automatically say we can put this on a cell phone. Because Cadiz says, if you're going to put it on a cell phone, take up the entire display. That's all Cadiz says. And what Google and the board failed to acknowledge is that against the weight of the teaching by Cadiz, they said, you know what, a person of ordinary skill in the art could have, right, that's a key word, they didn't say would have, they said the POSA could have implemented this on a cell phone. Well, there's absolutely no disclosure of that. Well, you're spending all your time on this one little narrow claim for issue about cell phone, which honestly the best it possibly gets you is a vacate and remand, and then honestly the board adopts in a clearer fashion exactly the rationale that you don't want them to adopt. I mean, that's the end result here. I mean, you're not going to win on that one. So do you want to, I mean, I'm not saying you won't win with us, but you're not ultimately going to walk out victorious on claim four, because the Cadiz reference gives enough for the board to readily conclude. It's obvious in a clearer way than it already did. So why don't you move to your claim construction argument, which I think was sort of the prominent one in your brief. I mean, you're just spending so much time on this one narrow little issue that I don't feel like you have a lot of long-term success on. Do you want to maybe move to the other issue? I will do so in one second, Your Honor, but I do think it's important to note that Google's petition does not rely on obviousness for the cell phone limitation, and I think that if it goes back to the board, that won't be an argument we pursue, that this is not an obviousness argument with respect to that limitation. Moving on to the claim construction issue, so another error that the board committed was with respect to the selectable link that's embedded in the additional dynamic preview information. The board ignored a number of things, which led to an error in claim construction. It ignored the plain language of the claim, which is that the selectable link must be embedded in the additional dynamic preview information. So the board made two errors. First, it said the additional dynamic preview information does not all need to be dynamic, that it can include static information. But then the board took it even further, became even more erroneous, to say that now the selectable link can be completely static. Because the additional preview information does not all need to be dynamic, then the static portion can be the link. Now that is completely unsupported by any of the intrinsic evidence. The claim language says that the link has to be embedded in that dynamic information. The specification makes clear that the dynamic information are counts of e-mails. So, for example, 50 unread e-mails. That 50 is dynamic, it changes, and that 50 is the link that's selectable. And finally, perhaps in one of the most grossest errors here, is that the board completely ignored the BlackBerry applicant's statement during the prosecution, which clarified or distinguished over a piece of prior art. So the prior art had a static mail icon next to dynamic information, and BlackBerry told the patent office, this is not our invention. Our invention, in fact, it amended the claims, added the embedded language, and said our invention has the link embedded in the dynamic information. And the board disregarded all of those statements, did not find a disclaimer, and ultimately led to its erroneous conclusion. Do you think the call voicemail link is also entirely dynamic? No, Your Honor. Which is 610. It's number 610, right? That's correct. The call voicemail link is not a selectable link embedded in dynamic information. But the specification expressly says that the call voicemail link is exemplary of the type of link, and it never mentions the 50 unread, which is the e-mail one that you're mentioning. It never talks about that. Yes, it's in the spec, this 50 unread, and it's underlined, so I assume it's a link. But when the spec talks about the actual link that meets, I think, the claim requirements, it's talking about call voicemail. It's the only one it calls out in the discussion, and that's not dynamic. So how do you? So the specification calls out the call voicemail link as a link. The specification does not call that a selectable link embedded in the dynamic information. So you may recall during the prosecution that the claims originally started out very broad, and all of this additional embedded language was amended to overcome the prior art, and that's exactly the prior art I was talking about earlier, where in order to distinguish over a prior art reference that had a static link next to dynamic information, BlackBerry added the embedded language to say that here we're narrowing our invention to show that the link must be embedded in dynamic information. So the call voicemail link may be a link here, but it's a static link, and it is not part of the ultimately narrowed claimed invention in the 304 patent. You're into your rebuttal time, so why don't we hear from the other side? Thank you, Your Honor. Good morning, Your Honors. May it please the Court. The Board correctly construed the selectable link limitations. In any event, even if BlackBerry's construction is adopted, the Board's findings are supported by substantial evidence. Let me explain why. So I'd like to start with the claim construction issue. So if you look at the plain language of the claim, and I want to remind the Court, we're talking about claim construction under the broadest reasonable interpretation standard here. So if you look at the claim language, the claim language broadly recites a selectable link, whether or not it includes dynamic information. The claim language does not modify or qualify the selectable link term in any manner that would require it to include dynamic information. The claim says the additional dynamic preview information comprising a selectable link. So isn't that suggestive of the fact that the link has to be dynamic? Your Honor, that's certainly the argument to make. We respectfully disagree. But you started by saying nothing in the claim suggests this, and I think they've got a strong argument that the claim suggests this. They may not prevail, but I think that you're dramatically overstating your case about the plain language of the claim. And, Your Honor, we can look at the rest of the intrinsic evidence. We believe the claim language doesn't support them. But if you look, as this Court is aware, the claims need to be construed in light of the specifications, especially in light of the standard that we have here. So if you look at the specification, I think the specification language that, Your Honor, you pointed to, Judge Moore, is fatal to their argument here. So let me just go to that language first. And that's at A79, Column 7, 60-66. There, in describing Figure 6, the specification describes preview information as comprising a Count 608 and a Link 610. And what's more important here is that that particular language is what they pointed to during prosecution. So if you look at A977, that's part of the prosecution history, they actually pointed to this particular passage in the specification as support for the selectable link limitation that they want this Court to construe differently today. So we think their representations to the Patent Office during prosecution about this language in the specification is fatal here. What's more, if you look at other passages in the specification, for example, if you look at A79, Column 7, Lines 52-59, that talks about the missed call from NNN. There's no dispute here that missed call from NNN would include both dynamic information and static information. And the specification calls that collectively as dynamic preview information. So we believe the specification simply does not support their argument. And then if you look at Figure 4, which is the other figure that they again relied on during prosecution, that also does not support their argument. Just like the other figures, it discloses static text and what they would agree and we would agree is dynamic information. So the fact that if you look at the specification holistically and even the specific passages, the specification clearly describes dynamic preview information as including both static information and dynamic information. So the Board did get this right. Then with respect to the prosecution history, we believe that also supports the Board's construction. The Board looked at the prosecution history, evaluated both parties' arguments, and disagreed with BlackBerry. So they like to point to two statements in the prosecution history. But if you look at them, for example, at A902, there's nothing in the prosecution history that tells you that the selectable link has to include dynamic information. Similarly, at A925, they point to presentation of static icons. For example, in a dynamic bar being different from the dynamic preview information. And if you look at that too, again, there's nothing there that tells you that the link has to include dynamic information. In fact, if you look at Claim 13 of the 384 patent, that's at A81, that actually tells you that a link or an icon can be included as part of the dynamic preview information. So we think all of these pieces of evidence, the intrinsic evidence, supports the Board's construction and the Court should affirm that construction, especially in light of their statements about Figure 6. So if there are no other questions on the claim construction issue, I'd like to turn quickly to the Claim 4 issue. I thought you started by saying even if you don't agree with claim construction, you've got the alternative of substantial evidence. So did you finish that point? I did not, Your Honor. I'm happy to address that. And I think it is an important point, which is that the Court actually need not reach the claim construction issue here. It can simply affirm the Board on the substantial evidence issues. And with respect to, for example, the person-centric interface, as Your Honor knows, there were multiple reasons why the Board found the claims invalid here. With respect to the person-centric interface, leaving aside the issue we believe that argument is waived on appeal, leaving that aside, the Board did a very nice job here. It looked at all the evidence, it considered all the arguments, and provided a well-reasoned decision. So, for example, the Board looked at Google's arguments and the expert testimony from Google where it showed why one of ordinary skill would have motivation to take the dynamic text in Window 825 of Cadiz and turn it into a selectable link. That's at A198-199 was Google's petition. We have supporting evidence from Dr. Olson at A10 to Appendix A12. Cadiz itself tells you how you would generate links. It tells you you can use HTML. Well, that said, again, testimony from Dr. Olson, Paragraph 86 at Appendix A10. The Board gave reasons why you would have the motivation. It said this would provide a better user experience because the amount of visual clutter on the display would have been reduced. Again, with supporting testimony from Dr. Olson. So when you view the evidence, more than substantial evidence supports the Board's finding with respect to the person-centric interface. Then with respect to the email-centric interface, Judge Prost quickly addressing that. That's another independent basis for affirming the Board's decision here. So if you look at the email-centric interface, what the evidence shows there is that the Board made factual findings about the reference Cadiz. It said Paragraph 72 of Cadiz. What it tells you is that there is a limited email functionality that's provided by Cadiz. That's a factual finding made by the Board based on the evidence it evaluated. And the Board found, based on that, that there would have been motivation. There would have been reasons to modify that interface, the email-centric interface of Cadiz, to provide a fully functioning email software. Again, all of that is supported by the testimony that's underlying the Board's decision. And we believe substantial evidence more than supports the Board's decision here. So, Judge Prost, unless you have any other questions on substantial evidence issues, I can turn to claim forward. Judge Moore, did you have a question? I know we got cut off. No. Okay. So if we go to claim four, again, we believe substantial evidence supports the Board's finding with respect to claim four. I think the Board, again, if you look at the Board's decision, it steps through the evidence. And I think we have to step back for a minute. As Judge Moore pointed out, if you look at Cadiz, Cadiz is directed to a system and process for providing dynamic— in its decision that Cadiz discloses the limitations of claim four, that thus Cadiz discloses the cell phone. So, Your Honor, it certainly made that finding, but it also—this is an obviousness ground. And I think BlackBerry itself, it complains to the court today that it didn't understand Google's argument to be an obviousness one. But if you actually look at the underlying record, and I'll point you to— Show me that in your petition, because what the patent owner argues isn't relevant, what defines the contours of an IPR is your petition. Sure, Your Honor. So I think if you look at the petition, for example— What page?  So we can start at— So it's A203, Your Honor, is where the claim four is discussed, Appendix 203. Okay. And actually, maybe we can start with, Your Honor, if you go back to Appendix 155. So Appendix 155, obviously, is the table of contents for the petition. That sets forth the ground here. This was an obviousness ground for claims, all of the claims, as you can see. So then if you turn to claim four, claim four depends from claim one. And as Your Honor is aware, we obviously have some obviousness positions with respect to claim four. And then when we got to claim four on pages 45 to 46, we basically pointed back to the evidence that we relied on for claim one. And also all the passages where Cadiz discloses that its invention is suitable for use in a cellular phone. And then if you look at their— Just to be clear, so on page 203 to 204, I understand your argument to be Cadiz discloses the cell phone, not that Cadiz renders the cell phone obvious. I understand that you said obviousness with regard to claim four, but that's because on claim one, there are, she's correct, there are two limitations that you recognize are not, in fact, taught by Cadiz, and you call them out, and you explain why Cadiz renders those limitations obvious. And you do so in a methodical fashion and very well, but with regard to claim four, you don't do that. We do not do that, Your Honor, and I don't think it's necessary—it wasn't necessary for us to do that. And again, I would just point—I want to just give you one side, and then I'll go back to why we believe we win under even the disclosure arguments we made. The citation I wanted to give you quickly is, it said A409 and A413, that's their patent owner response, where they understood our argument to be more than just disclosure. They said Cadiz does not disclose or render obvious claim four. Yes, but that's because of your claim one points. I mean, this does not help you. You're overstating again. Fine, Your Honor. I think if we want to focus just on the disclosure arguments that Cadiz discloses, its invention would be suitable for use on a cell phone. We still think this court should affirm, and let me explain why. So if we go back to Cadiz, the way Cadiz is set up is it starts out in saying, well, its invention is a new system and process for providing dynamic communication access and information awareness in an interactive peripheral display. And that's at A1522, paragraph 2. Then Cadiz repeatedly states that its teachings are suitable for well-known computing devices, including a cell phone. It goes on, it doesn't stop there. It goes on and it explains the invention with respect to figures 1 through 3, 4A and 5. And I think Judge Moore, you had earlier alluded to those figures as describing its invention. And again, when it describes those, it talks about a cell phone. Then we get to the specific working examples, which are figures 6B, 8A through 8C and 10. It tells us those are merely exemplary screen images that are represented in Cadiz. And Cadiz again tells us that you would have been able to use all of the invention on a cell phone. And I know they like to point to the testimony from the experts, which says that there are several factors to be considered to put an image that's on a desktop on a cell phone. But they omit the testimony from Dr. Olson where he testified that figure 10, in fact, would have been implemented. A person could have implemented that on a cell phone, and that's at A4274. Yes, but that's what a person could do. That isn't what Cadiz discloses. You said Cadiz discloses this implementation on a cell phone, not whether a person of skill could make it work on a cell phone. And, Your Honor, I respectfully believe that it does disclose it. And the reason it discloses it, if we can go back to the board's example. Because, I mean, what we're concerned about is the person-centric and email-centric interfaces, right? I just don't see where they're expressly disclosed as being capable of being applied on a cell phone. Sure, Your Honor, and I think you have to look at it. I think if we go back to look at the board's decision and the way the board explained its decision, I believe it gives us the roadmap that we need to look at here. So if you look at A47, the board said Cadiz repeatedly references the use of the invention generally on cell phones. And it gives you a bunch of paragraphs. There's no dispute that Cadiz does that. Then Cadiz also discloses an embodiment that they talked about, figure 6C. If you actually look at the description of figure 6C, it tells you that the tickets and the implementation that's in the other interfaces also applies to 6C. So it's not as limited as they want to suggest. Then the board went on and made a factual finding. They said Cadiz does not expressly disclose, but the general disclosures in Cadiz, we agree with Petitioner that a fair reading of Cadiz in that those later embodiments build on earlier general concepts and that one of ordinary skill would understand that the later embodiments could also be implemented on a cell phone. The board didn't stop there, Judge Moore. It went on and told you why one of skill would have been able to take a desktop interface and put it on a cell phone. They said, well, Cadiz tells you you can resize the containers, right, the sidebars. You can resize the viewers. So it tells you that. And I think what's telling here is BlackBerry never argues that the interfaces here could not have been displayed on a cell phone. We're talking they're making a mountain out of a molehill. This is a simple limitation. It would not have been displayed. Again, it isn't the right test. The question isn't whether a skilled artisan could read Cadiz and figure out how to put it on a cell phone. The question is whether Cadiz actually discloses it on a cell phone. And, Your Honor, with all due respect, we believe Cadiz does. Based on the passages that I pointed to, if you look at figures 1 through 3, 4A and 5, again, those are the general descriptions of Cadiz. But when it's talking with the system in a generic fashion, it tells you, for example, the person-centric interfaces, the email-centric interfaces would have been implemented in a wide variety of environments, including a cell phone. We think that's more than substantial evidence. Where does it say that particularly? So, Your Honor, for example, if you look at— One paragraph. Sure. So if you look at 1526, paragraph 50 of Cadiz. So paragraph 50, it's the second sentence, Your Honor. It says, examples of well-known computing devices, systems, and environments and or configurations that are suitable for use with the invention include, but are not limited to, including a cell phone. So that's one example. I can give you others, Your Honor, if you like. I know, Judge Post, I'm out of time, but I'm happy to give you a couple other examples, Judge Moore, if you like. Okay. Thank you. Thank you. So, Judge Moore, I'm going to harp on Claim 4 for just one minute because it's an important claim. You're right that in the Board's decision, Appendix 47, all in one paragraph, the error is made plain. The Board starts with saying, we understand Petitioner's argument to be that Cadiz discloses use of the person-centric and email-centric interfaces on a cell phone. And then the Board proceeds to say that Cadiz does not expressly disclose. No, they don't say that. That's right. And then ultimately— No, they don't say that. They don't say Cadiz does not expressly disclose. Where do they say that? Right there. So first sentence of the paragraph was the first thing I read. Then you skip two sentences, and the fourth sentence of the paragraph says, while Cadiz does not expressly disclose employing the person-centric— I see. So I understand. I do see what you're saying. Okay. But I understand. Your problem is that I understand them as saying that throughout, in like seven or eight or ten different paragraphs, this reference says, this invention can be employed on things like a cell phone. And then there's a particular embodiment later on, which is of the same ilk of all the ones disclosed as being employable on a cell phone. And I understand the Board as saying this disclosure, likewise, is that that can be on a cell phone because they're saying the invention. And there's no doubt that the person-centric and email-centric versions later on are part of the invention. And they're saying the invention can be on a cell phone. So I think what they're saying is in the place where they talk about person-centric and email-centric, they don't mention cell phone. But since they mention it in eight different places and say the invention can be put on a cell phone, I think—I'll be honest. I just want to lay my reasoning out for you. I think that's the fairest reading of the Board's analysis. Understood, Your Honor. But what Cadiz teaches is that the generic invention can be implemented on a cell phone, but then Cadiz gives multiple different implementations. And just to note, for Claim 1, what the Board relied on are the implementations in Figures 6B, 8, A through C, and 10. All right? So those specific implementations, there's absolutely no disclosure you could do that on a cell phone. And, in fact, Cadiz in paragraph 176 teaches that different user interfaces are implemented on different platforms. The example that's used at the end of paragraph 176 is that you can even do it via a physical icon, such as, for example, a doll that turns its head to one side when a person or entity which it represents is either available or unavailable. If you use a physical doll to indicate whether somebody's available or not available, you cannot implement the specific implementations of person-centric and email-centric disclosing those other figures on a doll. So just because Cadiz says you could do this on a number of different platforms does not mean that you can take every single implementation and actually put it on every single platform. And, if anything, Cadiz says you need to do it differently depending on what your implementation is. And then Cadiz does not teach you that you can do this person-centric and email-centric on a cell phone. I think I'm out of time. Thank you. The case is submitted and then we move on to the related case, 19-1.